UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

RENEE MARIE GILLESPIE,
    Debtor.

Case No. 22-20855-dob
Chapter 7 Proceeding
Hon. Daniel S. Opperman

_____/

## OPINION REGARDING DEBTOR'S MOTION FOR AN ORDER FINDING CREDIT CORP SOLUTIONS, INC. AND ROOSEN, VARCHETTI AND OLIVER IN CONTEMPT

Following an evidentiary hearing on July 15, 2025 on Debtor's Motion for Contempt, the Court entered an Order Setting Deadlines to File Briefs. Thereafter, both Roosen, Varchetti and Oliver ("RVO") and Debtor filed post-hearing briefs. At the evidentiary hearing, the Court received the Debtor's Exhibits 1 - 12 and Creditor's Exhibits A - J, and heard testimony from the Debtor, Nancy Stonehouse, a paralegal employed by Creditor, and Richard Roosen, a member and senior partner of Creditor, as well as arguments from both the Debtor and Creditor.

### Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

### Findings of Fact

The general facts are undisputed in this matter. Credit Corp Solutions, Inc. ("CCSI") is the assignee of Synchrony Bank and Ms. Gillespie owed Synchrony Bank money through a credit facility offered by Synchrony Bank through Amazon.com. CCSI retained RVO to sue Ms. Gillespie in the Crawford County District Court and a complaint was filed on September 24, 2021. Ms. Gillespie did not respond to the complaint, so a default judgment was entered on December

1

16, 2021.  Thereafter, Mr. Roosen, on behalf of his client, CCSI, and as a principal in the law firm of RVO, applied for a writ of garnishment directed to Ms. Gillespie's employer.  Her employer filed a garnishee disclosure on August 15, 2022 verifying her employment with it, and confirming it would begin garnishing the appropriate amount of funds from her paycheck.  In response, Ms. Gillespie consulted with Mr. Friedman about bankruptcy relief and a petition was filed with this Court seeking relief under Chapter 7 of the Bankruptcy Code on August 31, 2022. This date was the Wednesday before Labor Day weekend, Labor Day being on September 5, 2022.  Mr. Roosen did not receive notice of Ms. Gillespie's bankruptcy until September 1, 2022 and he signed a garnishment release on September 6, 2022, the day after the Labor Day holiday. The original garnishment release listed September 6, 2022 as the effective date, but this date was in error and as a result of these bankruptcy proceedings, it appears was corrected to September 1, 2022, the date of actual receipt of notice of the bankruptcy.

RVO then sent the garnishment release to the Crawford County District Court which processed the release on September 12, 2022 and sent the appropriate copies to the necessary parties that day.  After the August 31, 2022 bankruptcy petition, Mr. Friedman advocated to get these funds released and sent back to Ms. Gillespie, but return of the funds to Ms. Gillespie did not occur until early November 2022.  This return was complicated because Ms. Gillespie's employer, Spartan Nash Associates, LLC, utilized ADP, Inc. to handle payroll and garnishment services. RVO received checks from the garnishment but sent the checks back. ADP ultimately returned the funds to Spartan Nash, which in turn paid Ms. Gillespie. This process took a significant amount of time, resulting in payment back to Ms. Gillespie occurring approximately 2 ½ months after her bankruptcy petition.  As a parenthetical, some of the funds garnished are arguably pre-petition wages, but the majority are post-petition wages.  The Court makes this

notation in conjunction with an observation that RVO, when it returned the funds, returned an amount that could be perceived as a preference even though it had no obligation to do so.

On October 28, 2022, Ms. Gillespie filed a motion with the Crawford County District Court seeking to set aside the default judgment, arguing that the judgment was entered for false and fraudulent reasons. Although the record is not particularly clear, it appears that RVO contacted the Crawford County District Court, and that court refused to reopen the case because it was closed due to Ms. Gillespie's bankruptcy. After Ms. Gillespie was granted a discharge in this bankruptcy case, her counsel filed a second motion in the Crawford County District Court seeking to vacate the default judgment for the same reasons as before. Subsequently, the Crawford County District Court dismissed the case pursuant to consent of the parties on May 11, 2023.

Ms. Gillespie's instant Motion for Contempt asserts that RVO and CSSI violated the bankruptcy stay for several reasons. First, although RVO prepared the garnishment release five days after Ms. Gillespie's bankruptcy, RVO violated her bankruptcy stay by not contacting the garnishee defendant and informing them that the garnishment release was filed. Ms. Gillespie argues that RVO's mere reliance on the filing of the garnishment release constituted a violation of the stay. Second, RVO received checks totaling $606.91 from ADP. Instead of notifying either the bankruptcy trustee or Mr. Friedman, RVO sent those checks back which added another six weeks to the time in which Ms. Gillespie received her funds. Third, on two separate occasions, RVO sought to stop the Crawford County District Court from hearing Ms. Gillespie's motion to reopen the state court case. While the $606.91 has been returned to Ms. Gillespie, she asserts she was deprived of such for 71 days, and requests punitive damages in the amount of $100 to $250 per day. This would calculate to, at most, $17,750 in punitive damages requested. However, in Mr. Friedman's post-hearing brief, $50,000 in punitive damages is requested. Additionally, additional

relief of the appointment of a "corporate monitor pursuant to 11 USC 105(a)" is requested to oversee the garnishment release processes of RVO concerning all bankruptcies filed in the Eastern District of Michigan and possibly all bankruptcies in this country.

Prior to the evidentiary hearing, Mr. Friedman proffered a spreadsheet of "three hundred other errors [by RVO that] occurred in the ten months prior to" the filing of Ms. Gillespie's bankruptcy case. This list of cases was reduced to a random one-third sampling of these cases, which was admitted as Ms. Gillespie's Exhibit 7, and is offered to demonstrate a short period of time in which the incorrect effective date was stated in the garnishment release. RVO disputes that this spreadsheet of cases demonstrates such, and carries no weight because the garnishment release forms upon which it is based were not proffered as evidence at the hearing.

In response, RVO generally denies the legal effect of the facts as pled by Ms. Gillespie and urges this Court to not award her any relief. RVO admits that the incorrect date was placed on the garnishment release form. Per RVO, and in particular Mr. Roosen's testimony, this practice has been corrected, and the effective date of the garnishment release is now the date in which the Debtor filed a petition with this Court. RVO also argues that when the checks were sent to RVO it had no other recourse other than to return the checks because the endorsement of the checks by Mr. Roosen or by anyone from RVO could be construed as a control of funds that violates 11 U.S.C. § 362. Finally, RVO argues that Mr. Friedman's effort to reopen the Crawford County District Court case required them to respond to what RVO characterizes as false allegations or fraudulent statements to the Crawford County District Court, which it maintains is not the case. RVO also points out that had Ms. Gillespie merely requested that the discharge act as a complete bar against the enforcement of the judgment issued by the Crawford County District Court, they

4

would have agreed to that relief, as supported by the May 11, 2023 order of the Crawford County District Court.

The evidentiary hearing was limited to issues of fact concerning the first and second arguments made by Ms. Gillespie. In particular, the Court allowed Ms. Gillespie to present evidence at the evidentiary hearing as to a one-third sampling of the other approximate 300 garnishment releases that were improperly dated so that a record could be developed as to the extent of monies that may have been held by RVO. The Court noted that while it appeared that RVO had corrected this practice, the Court saw merit in exploring this inquiry at an evidentiary hearing because such would be helpful in determining the extent of mistake and existence of abuse, which would impact limiting or mitigating any damages that may or may not be awarded.

Law

Section 362(a) automatically stays all proceedings against the debtor as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of this case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or

to exercise control over property of the estate . . .

Thus, a bankruptcy petition operates as a stay of "any proceeding to recover a claim against the debtor" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The purpose of the automatic stay is to give the debtor a "breathing spell from his creditors." *In re Banks*, 253 B.R. 25, 29 (Bankr.

5

22-20855-dob    Doc 157    Filed 02/26/26    Entered 02/26/26 15:55:36    Page 5 of 10

E.D. Mich. 2000). The legislative history indicates that the stay provides a debtor broad protection from his creditors by stopping all collection efforts, all harassment, and all foreclosure actions. *Id*. (citation omitted).

A party violates the automatic stay by taking any action prohibited by Section 362(a) after receiving notice of a bankruptcy filing. *Id*. "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997) (quoting *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)). To show liability under Section 362(k), the Debtor need only show actual notice of the bankruptcy and an act in violation of the stay. "Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages." *Daniels*, 206 B.R. at 445. The automatic stay requires creditors to take affirmative steps to halt or reverse any pending suits or collection efforts begun prior to bankruptcy, including garnishment, repossession of a vehicle, and foreclosure of a mortgage or lien. *Banks*, 253 B.R. at 30.

Thus, the Court must question whether there was a violation of the automatic stay, however done and with whatever motive, whether willful or not.

For willful violations of the stay, an individual debtor can recover damages under Section 362(k), which provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

Subsection (h) applies to individual debtors in which the stay is terminated "with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject

to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)" to take certain actions.

"An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were 'proximately caused by and reasonably incurred as a result of the violation of the automatic stay.'" *In re Baer*, No. 11-8062, 2012 WL 2368698, at *10 (B.A.P. 6th Cir. June 22, 2012) (quoting *Grine v. Chambers* (*In re Grine*), 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010) (citing *Archer v. Macomb County Bank*, 853 F.2d 497 (6th Cir. 1988))).

"[A] damage award must not be based on 'mere speculation, guess, or conjecture.' Proof of damages requires that degree of certainty that the nature of the case admits." *In re Perrin*, 361 B.R. 853, 856 (B.A.P. 6th Cir. 2007) (quoting *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir. 1988)). "A bare statement by the debtor that he incurred damages without some form of supporting evidence as to the amount will not satisfy the evidentiary requirements of § 362(k)." *Baer*, 2012 WL 2368698, at *10 (citation omitted) (finding that the debtor failed in his "burden of requesting damages in a certain amount and of supporting that claim with evidence").

Section 362(k) also allows for an award of punitive damages "in appropriate circumstances." "Although courts are required to award actual damages to an injured plaintiff for violations of the automatic stay, the imposition of punitive damages is left to the court's discretion." *Tyson v. Hunt* (*In re Tyson*), 450 B.R. 754, 766 (Bankr. W.D. Tenn. 2011) (citation omitted).

Analysis

The Court first notes that in this case RVO sent back monies that were arguably preferences in which it had no duty to do so, which weighs in favor of RVO. As Mr. Friedman argues, creditors, such as CCSI who may purchase this debt at a deep discount, may have no incentive to

return any monies whatsoever. In this case, however, CCSI returned these funds. The amount at issue may not be much in the abstract, but for Ms. Gillespie it is a significant amount.

Moving past the potential preference return issue, the timing of the return of the $606.91 is analyzed as follows. RVO prepared the garnishment release on September 6, 2022, five days after RVO received notice of Ms. Gillespie's bankruptcy. Notice was received on a Thursday preceding the Labor Day holiday weekend, and the garnishment release was prepared on the first day after Labor Day. The Court concludes that RVO could have prepared and filed the garnishment release either on September 1 or September 2, but this four-to-five-day delay with an intervening holiday weekend was not the proximate cause of the 2 ½ month delay in the ultimate return of the funds. Rather, this delay was caused by the legally required sequence of steps to return these funds to Ms. Gillespie. The testimony of Nancy Stonehouse, a paralegal with RVO, supports the sequence of steps taken in this regard. Ms. Stonehouse testified that checks received after a garnishment release are always returned to where they originated, never directly to the debtor or the debtor's attorney. In this case, the checks were returned to ADP, which handled the payroll for Ms. Gillespie's employer, Spartan Nash. Ms. Stonehouse testified that the steps taken by RVO to facilitate the return of the garnished funds to Ms. Gillespie occurred in the normal course at the normal timing, and RVO did not take any action or nonaction to slow the process down. The Court rejects Ms. Gillespie's argument that RVO violated the bankruptcy stay by not contacting the garnishee defendant and informing them that the garnishment release was filed. A phone call in this regard would not have been enough, nor should a garnishee defendant rely upon a phone call.

The cases cited by Ms. Gillespie such as *In re Timbs*, 178 B.R. 989 (Bankr. E.D. Tenn. 1994); *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485 (Bankr. S.D. Ohio 1989); and *In re Dungey*, 99 B.R. 814 (Bankr. S.D. Ohio 1989) do hold that a creditor attorney must take affirmative action

to stop a garnishment. Here, RVO took the necessary action, but the judicial and administrative process slowed the return of the garnished monies, not the actions or inactions of RVO. The Court sympathizes with the delay experienced by Ms. Gillespie, but that delay is not the fault of RVO.

As to Ms. Gillespie's second point, the Court required in its August 29, 2024 Order Setting Deadlines for Production of Certain Documents that Mr. Friedman provide testimony of the Spartan Nash employee, or at least testimony as to the identification of this individual, who supposedly had the information necessary to release these funds earlier and the details of how that information was shared or not shared with CCSI and RVO. Such was not provided by the August 30, 2024 deadline imposed in that Order, or at the evidentiary hearing. Accordingly, allegations concerning this second point remain an unsubstantiated allegation by Ms. Gillespie that RVO had acted anything other than expediently and appropriately in processing the return of the checks to ADP.

For these reasons of timing and the normal practice in this industry and of RVO in particular, the Court concludes that under the cases cited above, Ms. Gillespie's damages were not "proximately caused by and reasonably incurred as a result of the violation of the automatic stay" by RVO. *Baer*, 2012 WL 2368698, at *10 (citations omitted).

Finally, how the approximate 300 other cases may support the above two points is tenuous to demonstrate a pattern by RVO of incorrect or delayed garnishment release dates. Per the Court's August 29, 2024, Order, the Court required the following:

> IT IS FURTHER ORDERED that information regarding the details of over 300 bankruptcy debtors who had garnishments released with an incorrect release date must be supplied by September 20, 2024. Theis information is to be supplied for one-third (1/3) of the debtors in question on a random basis and include details regarding the correct bankruptcy petition date, the incorrect garnishment release date, the funds received by Roosen, Varchetti and Oliver as a result of the affected garnishments, and the date and amounts of any funds returned to the affected debtors.

The Court's review of the sampling of cases revealed that the delay between the bankruptcy petition date (not necessarily notice of the bankruptcy) and the garnishment release was, on average, 3 to 6 days. While this delay may be relevant—yet not necessarily persuasive—to establish a pattern of conduct by RVO for purposes of awarding punitive damages, there can be no award of punitive damages without proximate cause for actual damages. As the Court has concluded, the facts of this case do not support actual damages; thus, this information is prima facie irrelevant.

Accordingly, the Court concludes that any damages suffered by Ms. Gillespie due to the delay in receiving the $606.91 were not proximately caused by RVO's four-to-five-day delay (with intervening holiday weekend) in signing and filing the garnishment release. Further RVO's established practice of returning checks to the payroll company, which in turn returned the checks to Ms. Gillespie's employer, and which in turn returned the checks to Ms. Gillespie, was a practice of adherence to the bankruptcy stay, not in violation of it. The Court notes the legal effort and fees incurred on both sides in this case, and commends both counsel for their advocacy, but with these facts, an award of attorney fees and costs is not warranted.

**Not for Publication**

**Signed on February 26, 2026**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**